UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE T. SWINEY

       Plaintiff,                          CIVIL ACTION NO. 09-13055

     v.                                    DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF                 MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of defendant's decision denying plaintiff's application for social security disability benefits. Plaintiff filed this action *pro se* and has not submitted a Motion for Summary Judgment. Plaintiff is insured for benefits through December 31, 2011. The court considered the record, the government's motion and brief, and the representations made by plaintiff in his hand-written complaint in lieu of his Motion. Plaintiff alleges that he became disabled in October, 2006 due to back problems, resultant pain, and depression. His claim was denied initially. At his hearing before the ALJ, plaintiff was represented by an attorney. The ALJ determined that plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with multilevel bulging of the disks, small posterior right paracentral disc protrusion, and left paracentral disc protrusion at T12-L1, and also depression. The ALJ found that the impairments did not meet the Listings, but that plaintiff could not perform his past relevant work. The ALJ then considered whether there was any other work that plaintiff could perform. Relying on testimony of a vocational expert as well as the

1

medical evidence and guidelines, the ALJ found that plaintiff could perform a limited range of light work, which provided a sit/stand option. These jobs existed in significant numbers. (Tr. 9-23) Thus, the ALJ found that plaintiff was not disabled.

Plaintiff contends that the decision is not supported by substantial evidence. Specifically he contends that the ALJ was biased on the medical issues and disregarded his complaints of pain. In addition, he states that his depression affected his pain and back problems. (Complaint #1, p 2) The government contends that substantial evidence supports the ALJ's opinion. For the reasons discussed in this report, it is recommended that the decision denying benefits be affirmed.

At the time of the decision, plaintiff was 45 years old, which the regulations define as a "younger individual."20 CFR §404.1563. Plaintiff has a high school education and past relevant work as a printer and grounds maintenance worker. He was found able to perform unskilled work as an assembler (3000 jobs), packer (3000), inspector (1000) and an additional 7000 to 8000 jobs at the sedentary exertional level. (Tr. 23)

**Standard of Review**

The Commissioner's final decision is subject to judicial review under 42 U.S.C. § 405(g), which provides, *inter alia:* "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A court " 'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standards or has made findings of fact unsupported by substantial evidence in the record.' "
*Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir.2007) (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997)). If the Commissioner's decision is supported by substantial evidence, the court must defer to that decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (quoting *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir.2003)).

Disability is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). An individual will only be determined to b under a disability if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

The ALJ, in determining whether a claimant is disabled, conducts a five-step analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

3

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner*, 127 F.3d 525, 529 (citing 20 C.F.R. § 404.1520).

Under the five-step inquiry, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003). To prevail at step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity," *id.,* taking into account factors such as age, education, and skills. *Walters,* 127 F.3d at 529.

The issue before the court is whether to affirm the Commissioner's determination. In *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

*Brainard,* 889 F.2d at 681.

**The Hearing**

Plaintiff testified at the hearing that he was divorced and lived alone in a house. (Tr. 31) Plaintiff finished tenth grade and then obtained his GED. (Tr. 32) He had a short time in the military but could not adjust and left. He last worked June 30, 2006 and was unable to continue as he had no transportation after his DUI conviction. (Tr. 33) The onset date was amended to October, 2006 based upon an MRI at that time which indicated abnormalities. Plaintiff's jobs have been in maintenance and printing. (Tr. 33) The physical condition which prevents him from working is the back problem. He has four bad disks that need surgery and they cause pain that shoots down his back and makes his toes numb and tingle and throb. (Tr. 34) The condition affects his ability to stand and walk. He can walk five blocks on a good day and is supposed to use a four point cane. (Tr. 35) His treating physician is Dr. Dodson (sic) and he also treats at a pain clinic where he sees Dr. Burr. (Tr. 36-7) He has been placed on restrictions to lift no more than ten pounds. (Tr. 38) Plaintiff is on several medications including Vicodin, Flexeril, Lyricia, Lexapro, and inhaler, Adderall and occasional Motrin. Sometimes the medications make him sleepy; this situation lasts about four hours a day. (Tr. 39-40) In the morning, his neighbor helps him get ready and he often has a friend come by to take him to the store. Otherwise, he sits in a recliner, watches a little TV but cannot stay there more than an hour. In the evening he makes a TV dinner, and goes back to his recliner. (Tr. 41-42) He has difficulty doing his own laundry but his neighbor helps him do that as well. (Tr. 42) At least once a month, a Ms. Sperks comes over from the Mental Health Department to see how he is doing and treats him for depression and anxiety. (Tr. 43-44) Plaintiff has been going to AA and has some friends from there. He can get along with people and is usually quiet. Sometimes he has problems

concentrating; for instance, going into a room and forgetting what the wanted there or forgetting what he was talking about. (Tr. 47) His back causes him a lot of trouble and feels like an elephant is on it most of the day. (Tr. 48)  In an eight hour time period, he could walks couple three hours, stand 10 to 15 minutes at a time, and sit 20-25 minutes at a time. (Tr. 49-50) He still drinks occasionally and may smoke marijuana occasionally.  (Tr. 51-52) He has had outpatient treatment for his substance issues and believes it was successful. He does continue to attend AA meetings. (Tr. 54)

Susan Entenberg testified as a vocational expert.  (Tr. 55) She stated that plaintiff's past work as a printer was heavy and skilled.  His ground maintenance work was medium, unskilled work.  (Tr. 56)  The ALJ propounded a hypothetical that asked the VE to assume a person like plaintiff who was limited to only light work with the ability to sit/stand at his option to relieve pain; only occasionally climb or stoop; frequently balance, kneel, crouch and crawl.  Such a person would not be able to do plaintiff's past work and there would be no transferable skills. There would be other jobs, such as unskilled entry-level jobs as inspector, packer, and assembler at the light level and 7000 to 8000 similar jobs at the sedentary level.  (Tr. 57)  If plaintiff were totally credible on all impairments, and such impairments were supported by medical evidence, then no work would exist.  The vocationally significant portions are that he cannot sit or stand for any significant time and needs to lie down throughout the day. (Tr. 58)  Plaintiff's attorney argued that Dr. Dodson (sic Dotson Tr. 135) supports plaintiff's testimony and that plaintiff should be found disabled. Id.

**Medical & Other Evidence**

In his complaint, plaintiff references a variety of stressors.  These include foreclosure on

his home which is documented in the record. (Tr. 64-69) Plaintiff completed a daily activities report, as did other members of his family, regarding his activities in 2007. He stated that he got up and stretched for about 20 minutes in the morning, made coffee, checked his calendar for appointments, ate cereal or oatmeal, and took his medication. After someone drove him to his appointments, he would go home and watch TV while he did more stretches. He has pain every day; his bother helps him with chores. He is on the sofa most of the time. Concentrating and focusing on tasks is getting harder to do and he has frequent back spasms. He often forgets what he is doing; he gets confused, and forgets to take meds. (Tr. 158-160)

Plaintiff had several MRIs at Memorial Healthcare. In October, 2006, the MRI showed herniation of his disks. There was normal height of the vertebral bodies and disk spaces except at L2-L3 where there was moderate narrowing of the disk space with dehydration. There was also moderate narrowing at L5-S1. There was normal lumbar lordosis and no evidence of spinal stenosis. Axial images at L5-S1 showed midline and right paramedian herniation of the disk producing a slight mass effect and posterior displacement of the right S1 nerve root in the lateral recess. (Tr. 171)

In January, 2007, plaintiff was seen for follow up by Dr. Palavali, MD at the Great Lakes Spine Center in Flint, Michigan. (Tr. 178-9) He had no cervical but mild L5-S1 spine tenderness. Lumbar MRI showed L3-4 disc degeneration and L5-S1 disk degeneration, prolapse and retrolisthesis. Id. Intradiscal Electrothrothermal Therapy was recommended. (Tr. 179) In July, 2007, plaintiff returned and the pain had not improved. The leg pains now go into his calves. Possible surgery was discussed and plaintiff still was considering that option. (Tr 180)In 2007, the MRI of the cervical spine showed a bi-concave deformity of the C3 vertebral body on

7

the sagittal images in the midline, probably due to Schmorl's nodes; multilevel small disk osteophyte complexes causing mild epidural compression on the thecal sac, bilateral foraminal stenosis. There was no evidence of focal disk herniation or central canal stenosis. (Tr. 173) Also in March 2007, plaintiff had a CT scan which indicated that the pain appeared to be exactly replicated at L5-S1. There was degenerative spondylotic spurring at L2-L3 and other degenerative problems. (Tr. 175-6)

Plaintiff has treated with Dr. Salman for chronic back pain at least since May, 2006. (Tr. 191-192) Plaintiff was given Vicodin, Flexeril, Effexor, Motrin on various occasions. (Tr. 190, 185) In March, 2007 plaintiff was seen by Dr. Salman who noted that plaintiff was a poor historian and assessed him as acute back pain among other things. Pain medication was helping and he was continue his back exercises. (Tr. 184) In April, 2007, plaintiff was again seen by Dr. Salman who noted a history of herniated disc. He had normal straight leg raising, normal muscle strength, negative straight leg raising, and normal gait. (Tr. 181) The plan was to continue pain medication, avoid lifting or pushing heavy objects, call back if not improving. No opinion was offered regarding disability. (Tr. 182)

A Mental Residual Functional Capacity Assessment by a psychiatric specialist Dr. Kaul indicated that plaintiff was not significantly limited in any areas except for moderate limitations in ability to understand and remember detailed instructions, carrying them out, and maintaining attention for extended periods. (Tr. 197) The medical consultant's conclusion was that plaintiff was able to perform unskilled work. (Tr. 199, 212-221) Alcohol abuse was in partial sustained remission. (Tr. 221) Similar restrictions were noted with respect to mild limitations in daily living and moderate difficulties in concentration and pace. (Tr. 223) A Physical Residual

Functional Capacity Assessment indicates that plaintiff can lift 50 pounds occasionally, 25 pounds frequently, stand/walk 6 of 8 hours and sit 6 hours. The reviewer Dr. Gupta noted the history of back pain, disc degeneration, and negative straight leg raising in his conclusion. (Tr. 205)

Shiawassee County Community Mental Health records indicate that plaintiff was seen frequently and has a variety of problems associated with depression, mood, and difficulty with his finances. There is some history of suicidal ideation, and he is unable to drive because he lost his license. (Tr. 227-228) He stated that he would really like to improve his function so that he can work and acquire an income because now he has only about $220 per month. His mood was noted to be depressed, his thought process intact, his appearance casual and clean, and his affect congruent with content. (Tr. 230-310)

**Analysis of Plaintiff's Allegations and the Evidence**

Plaintiff alleges that the ALJ disregarded his complaints of pain and failed to properly evaluate the medical evidence. The ALJ found his complaints were not fully credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. *Houston*, 736 F.2d at 367; *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997); *Villarreal v. Secretary of HHS*, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464. An ALJ's finding regarding the credibility of a claimant's testimony is entitled to great deference. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 536 (6th

Cir.2001).

In addition, both the Social Security Agency (SSA) and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. 20 C.F.R. § 404.1529; *Felisky v. Bowen,* 35 F.3d 1027, 1037 (6th Cir.1994). These were recently reiterated in *Scheu v. Astrue* 2010 WL 711813, 4 (M.D.Tenn.,2010). There the court noted that "[w]hile the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there." *Id.* The well established two prong standard for evaluating complaints of pain in this circuit is found in *Duncan v. Secretary of Health and Human Services.* 801 F.2d 847 (6th Cir.1986). First, the ALJ must determine whether there is objective medical evidence of an underlying medical condition. *Id.* at 853. Secondly, the ALJ must decide: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* This test does not require objective evidence of the pain itself. *Id.*

The SSA also provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. § 404.1529(c). The seven factors under 20 C.F.R. § 404.1529(c)(3) are: (i) the plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms; (vi) any measures plaintiff uses or has used to relieve pain or other

symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms.

In this case, the ALJ reviewed the medical evidence and found that it established that plaintiff suffered from low back pain since at least May 3, 2004 when he presented to the emergency room at Memorial Healthcare Center and depression. His MRI on that date showed minor impingement and small herniation at L3-L4. Two years later, he was seen by Dr. Reem Salman MD at Owosso with complaints of leg weakness and heaviness. At that time, he reported a chronic back pain condition of ten years duration. Plaintiff continued treatment with Dr. Salman and in October, 2006 underwent another MRI when he experienced bilateral leg numbness. This showed midline and right paramedian disc herniation at L5-S1, normal lumbar lordosis, and no evidence of spinal stenosis. (Tr. 15) In November, 2006, plaintiff was seen for follow up by Dr. Salman. Plaintiff reported some improvement with his back pain but his depression had not improved. He was to continue pain management, back exercises, referral to neurosurgery, and Ultram for pain. When seen again in December, 2006, plaintiff had not followed up for his treatment with the County Mental Health for depression. Dr. Salman gave him a prescription for Vicodin, 60 tablets, no refills and physical therapy. Plaintiff advised that he would participate if Medicaid could pay. (Tr. 15) In January, 2007 plaintiff was evaluated at the Shiawassee County Community Mental health for emotional problems. He reported hopelessness and purposeless since April 2006 when he lost his driver's license. Plaintiff was evaluated and assigned a therapist, Steve Farness. Plaintiff had to ride his bike to look for work and to therapy due to lack of a driver's license. Plaintiff was evaluated by a psychiatrist, Dr.

11

Katherine Chamberlain, MD, at Community Mental Health in January, 2007. Dr. Chamberlain diagnosed Major Depressive Disorder, recurrent and severe without psychotic features, and Alcohol Abuse in partial remission. Plaintiff's medication was changed from Effexor to Remeron to help with insomnia and mood. Dr. Chamberlain asked Dr. Salman to clarify plaintiff's work restriction and was advised by plaintiff that "there were jobs out there he could do"

It appears that this conclusion was supported by substantial evidence. There are unskilled jobs existing in the economy that plaintiff could perform at the light and sedentary levels. The court is sympathetic to plaintiff's physical and mental condition, as well as the difficulty in finding employment because of his lack of driving privileges. However, given his status as a younger individual, his impairments, and his education, the court is unable to say that the opinion of the agency is not supported by substantial evidence. Accordingly, it is recommended that the defendant's motion for summary judgment be granted and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: July 28, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on July 28, 2010.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan
